UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| WENDY KRATZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-206-AZ |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Wendy Kratzman's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with Kratzman that flaws in the Administrative Law Judge's ("ALJ") written decision require a remand and further assessment of Kratzman's fatigue and its impact on her ability to sustain a 40-hour workweek. The Court will reverse and remand the matter for further administrative proceedings.

### Background

Plaintiff Wendy Kratzman was 50-years old when she alleges she became disabled and unable to work on account of various impairments. A.R. 44.[2] Kratzman is a high school graduate who completed one year of college, and later obtained a

---

[1] On July 15, 2024, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 16.

[2] Citations to the Administrative Record, filed at DE 10, are throughout as "A.R."

certificate for medical office specialist. *Id.*; *id.* at 61. Prior to becoming allegedly disabled, she worked as a file clerk, an appointment clerk, and later as a substitute teacher. More specifically, from 2012–2021, she worked as a clerk and technician at a chiropractor's office on a part-time basis. A.R. 270. She further testified that after the onset of the COVID-19 pandemic in May 2020, she attempted to work full-time at the office, but that only lasted a few weeks before she testified it to her hospitalization. (A.R. 61 ("I just can't put in that many hours. It ruins my health"); *see also id.* at 230. ("I have not been able to work full time since December 2012; the long hours strain my health too much for me to function well."). Then, from February 2021 through February 2022, she worked as a substitute teacher, typically for 4 to 8 hours per week. *Id.* at 20.

Kratzman filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on November 12, 2021. A.R. 17. In her applications, she alleged a disability onset date of September 28, 2021. *Id.* Her claims were denied in the initial application, upon reconsideration, and Kratzman requested a hearing before an ALJ. *Id.* On June 14, 2023, the ALJ held a telephonic hearing at which Kratzman and a Vocational Expert (V.E.) testified. *Id.*

On August 16, 2023, the ALJ issued a written opinion, denying benefits. A.R. 17-28. Plaintiff timely appealed to the Appeals Council and on March 25, 2024, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 1. Plaintiff timely filed her complaint for District Court review.

Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Kratzman was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 28, 2011. A.R. 20.

At step two, the ALJ determined that Kratzman suffered from the following severe impairments: "asthma, mild bronchiectasis, allergic rhinitis, diffuse arthralgias, positive rheumatoid arthritis factor, complex regional pain syndrome, neuralgia, neuritis, status-post COVID infection with COVID sequelae, and dextroscoliosis/degenerative joint disease of the lumbar spine." A.R. 20. The ALJ found her other impairments to be non-severe and they are not relevant to determination of this appeal either. In discussing the impact of her severe impairments (which by definition limited her ability to perform basic work activities), the ALJ noted that, among other limitations caused by other impairments, Kratzman "can care for personal needs limited by her asthma symptoms" and that "due to energy deficits [Kratzman] has difficult finishing chores." A.R. 21.

At step three, the ALJ concluded that Kratzman does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable Listing which would presumptively entitle her to a finding of disability.

At step four, the ALJ determined Kratzman's Residual Functional Capacity (RFC) as:

> Perform[ing] sedentary work as defined in 20 CFR 404.1567(a)
> and 416.967(a) except that she is further limited to occasionally
> balancing, stooping, kneeling, crouching, crawling, or climbing
> ramps and stairs; never climbing ladders, ropes, or scaffolds;
> frequently handling, finger, and feeling with the bilateral upper
> extremities; avoiding more than occasional exposure to extreme
> heat, extreme cold, humidity, fumes, odors, dusts, gasses and poor
> ventilation; and avoiding all exposure to unprotected heights,
> unguarded moving machinery, open flames, and large bodies of
> water.

AR 22. The ALJ stated, as is standard, that she "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* And while the ALJ discussed other of Kratzman's impairments and conditions and the medical evidence supporting them, those descriptions need not be repeated here, *see id.* at 23-26, as Kratzman's appeal is limited to the single issue of the ALJ's consideration (or lack thereof) of her asthma-related fatigue.

Concerning Kratzman's asthma, in the narrative portion of the RFC, the ALJ noted Plaintiff's testimony that asthma is the source of her fatigue and that her functional report indicates asthma makes menial tasks exhausting for her. AR 23 ("[Kratzman] also believes that asthma causes her fatigue issues and she has to spend 1 day per week on the couch or in bed. In March 2022, she added that her severe asthma makes the most menial tasks exhausting."). Elsewhere, the ALJ chronicled some of Kratzman's history of asthma and respiratory issues but did not discuss the fatigue associated with these conditions. AR 24-25; *see also id.* at 2218 (December 2021 clinical notes stating patient had "quite severe asthma. Seem [*sic*] to have

4

worsened since the COVID-19 infection in September. ... The patient has severe asthma and she has been chronically on steroids."); *id.* at 911 (January 2022 clinical notes stating patient's asthma "has been a continuing problem. She is on an intensive medication program ... In spite of this, her asthma has been worse."); *id.* at 2760 (November 2022 clinical notes stating "Patient's asthma is currently very poorly controlled.") *but see id.* (November 2022 clinical notes stating "she does have increased energy since starting [a nebulizer]") and *id.* at 2754 (January 2023 clinical notes stating "Patient's asthma is currently improving given patient's symptom history and PFT results ... She has noted improvement, but continues to have daily symptoms and daily use of Levalbuterol.").

Concerning medical opinion evidence, the state agency doctors opined that Kratzman could generally perform "light" work. *See* AR. 87. The ALJ, however, found that "the state agency consultants' opinions are not persuasive, as the combined pulmonary, spinal, and rheumatoid arthritis conditions support the further restrictions to sedentary work activity." AR 26. The ALJ noted Kratzman's "pulmonary" conditions but made this finding of further restrictions without reference to asthma or fatigue. As mentioned, the RFC instead limited Kratzman only to "sedentary work" rather than "light work." A.R. 22.

With the RFC in mind, at step four, the ALJ concluded that Kratzman could perform her past relevant work as a "file clerk 1 as actually performed, and the appointment clerk generally." AR 27. This finding tracked the Vocational Expert's (VE) testimony with regard to Kratzman and her past work. However, the VE

testified on the issue of hypothetically only being able to work part time, and testified that if Kratzman could not work eight hours a day, she would not be able to perform her past work:

> **ALJ**: I want you to consider in this third hypothetical that the hypothetical individual would be limited to work activity for approximately four hours in an eight hour workday. And again, what is the impact on that individual's ability to perform the claimant's past work?
>
> **VE**: No past work, Your Honor.
>
> **ALJ**: And can you identify any other work in the national economy that would be consistent with the statements in the hypothetical?
>
> **VE**: No, Your Honor.
>
> **ALJ**: Why not?
>
> **VE**: Competitive employment requires the ability to work at least eight hours a day.

AR 68-69. The ALJ ultimately determined that because Kratzman could perform her past relevant work as a file clerk 1 and an appointment clerk, that Kratzman was not disabled. Accordingly, the ALJ did not need to proceed to step five and denied Kratzman's claim.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See*

*Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Kratzman advances a single argument on appeal: that the ALJ failed to adequately assess her ability to sustain full-time work (*i.e.*, an 8-hour day and 40-hour work week) on account of fatigue when the ALJ arrived at her RFC at step four.

In support, Plaintiff argues that the ALJ overlooked or did not adequately address her documented history of fatigue, as a result of her asthma,. In addition to the references to asthma and its impact within the ALJ's written decision, as well as

8

her testimony, Kratzman notes her history of complaints of fatigue to her medical providers. *See* A.R. 489, 585, 651, 1005, 1008, 1383, and 1391. She argues that while the ALJ acknowledged her asthma and fatigue within the written decision, the ALJ did not address those issues or their impact on her ability to work full-time when formulating the RFC and ultimately determining she was not disabled.

In support of her arguments, Kratzman relies heavily on *Maritza L. v. O'Malley*, 2024 WL 1933002 (N.D. Ill. May 2, 2024). In that case, an ALJ's decision denying benefits was reversed and remanded when the ALJ's written decision "barely mentioned Plaintiff's fatigue after listing the symptom reports and diagnoses and never stated how or why he believed her repeated descriptions of those symptoms were inconsistent either with each other or with other evidence." 2024 WL 1933002, at *3. That is quite similar to how the ALJ treated Kratzman's fatigue here. The ALJ recognized Kratzman's asthma as a severe impairment at step two, and Kratzman's fatigue was repeatedly acknowledged, but then was not discussed further in the written decision to either include or not include within the RFC's limitation. As another court put it, "[m]erely acknowledging Plaintiff's fatigue without analysis is insufficient." *Rebecca A. v. Kijakazi*, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022); *see also Clark v. Saul*, 421 F. Supp. 3d 628, 634 (N.D. Ind. 2019) ("It's true that the ALJ noted Clark's ongoing fatigue. But he failed to analyze it with regards to her ability to function both physically and mentally.").

In response, the Commissioner does not point to any discussion of Kratzman's fatigue within the written decision. Instead, the Commissioner argues that "neither

Ms. Kratzman's prior status as a part-time worker nor her unsupported subjective complaints of fatigue are sufficient to demonstrably establish that she cannot work on a full-time basis," DE 22 at 4-5, and that she "is unable to cite any objective evidence demonstrating that greater limitations were warranted." *Id.* at 7. As Kratzman convincingly argues, the Commissioner's narrow framing and implied argument that only "objective evidence" is relevant to determining the intensity and persistence of symptoms resulting from a severe impairment is incorrect. *See* 20 C.F.R. §§ 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). *See also Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016) ("[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts."); *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain."). Subjective complaints of fatigue are thus treated similarly to subjective complaints of pain and must be considered and addressed by the ALJ even if they are not part of the "objective medical evidence" in the file. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (reversing and remanding where ALJ failed to adequately address subject complaints of fatigue from daily activities in formulating RFC).

More importantly, the Commissioner's argument does not address Kratzman's argument as to how the ALJ erred. After reviewing the evidence, the ALJ acknowledged that Kratzman suffered from fatigue as a result of asthma, that it impacted her abilities, but then did not include any discussion of the impact of that fatigue on her ability to work or incorporate it into the RFC. It is thus "unclear if, or to what extent, [the ALJ] considered [Kratzman's] fatigue in concluding that [she] has the residual functional capacity to perform" her past relevant work on a full-time basis. *Allen v. Astrue*, 2008 WL 6600481, at *12 (N.D. Ill. Nov. 13, 2008). "The Commissioner cannot fashion a logical bridge that the administrative decision never built." *Wolford*, 658 F. Supp. 3d at 669. Review is "confine[d] … to the reasons offered by the ALJ" and the Court "will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence." *Phillips v. Astrue*, 413 F. Appx. 878, 883 (7th Cir. 2010).

This is especially true when, as here, the ALJ recognized that Kratzman's ability to care for her personal needs and do chores was limited by her "asthma symptoms" and "energy deficits." A.R. 21. And the VE testified that a hypothetical person with Kratzman's limitations who could only work four hours a day would be unable to find "competitive employment." AR 68-69. This further distinguishes this case from *Gibson v. O'Malley*, 2024 WL 835286 (N.D. Ind. Feb. 27, 2024), cited by the Commissioner. In that case, the Court affirmed the ALJ's decision because the RFC specifically addressed ways to reduce symptoms associated with the plaintiff's seizures that she alleged prevented full-time work. *Gibson*, 2024 WL 835286, at *5

("Gibson argues that the ALJ equated the ability to do part-time work with the ability to do full-time work. Clearly, however, the ALJ was evaluating Gibson's part-time work in order to determine what limitations to include in the RFC, such that Gibson's seizures would not be triggered."). Here there is no similar indication that the ALJ was attempting to account for Kratzman's fatigue symptoms within the RFC.

If the ALJ discounted, discredited or had other reasons why Kratzman's asthma-induced fatigue did not change their RFC determination, the ALJ needed to say so. On remand, the ALJ must discuss how Kratzman's fatigue affects her ability to work. Whether Kratzman has supplied evidence to support additional limitations (including an inability to work full-time) is not for the Court to determine, but for the ALJ to decide in the first instance.

## Conclusion

For the reasons discussed, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED this 1st day of July 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT